After a jury trial, the juvenile was adjudicated delinquent on charges of assault and unlawful possession of a dangerous weapon in a school. On appeal, the juvenile claims that there was insufficient evidence to support the adjudication of delinquency relative to the dangerous weapon charge and that the prosecutor erred in her closing argument. Because we agree with the first point and disagree with the second, we affirm the adjudication of delinquency as to the assault charge and reverse the adjudication of delinquency as to the unlawful possession of a dangerous weapon charge.
In the light most favorable to the Commonwealth, the jury could have found the following facts. The juvenile was a student at a high school. In class, a teacher walked past the juvenile and noticed that he had taped pins to three of his fingers and that there were a few pins on top of his backpack, which he had on his lap. The pins were described as "old fashion drapery pins without the hook part on them." They were also described as "safety pins without the hooks" and having "jagged" edges. When the teacher inquired what was on his fingers, the juvenile replied, "Edward Scissorhands." After the teacher requested that the juvenile give her the pins, the juvenile reluctantly complied.[3]
In pertinent part, G. L. c. 269, § 10(j ), as appearing in St. 1974, c. 649, § 2, states, "Whoever ... carries on his person a firearm ... or other dangerous weapon in ... any ... school ... shall be punished." Passing the other elements of § 10(j ), the juvenile claims there was insufficient evidence that the pins taped to his fingers constituted a dangerous weapon. We agree.
Because § 10(j ) does not define "dangerous weapon," the Supreme Judicial Court imported the common-law definition into the statute. That is, "dangerous weapons include those objects that are dangerous per se-'designed and constructed to produce death or great bodily harm' and 'for the purpose of bodily assault or defense,' Commonwealth v. Appleby, 380 Mass. 296, 303 (1980) -as well as those objects that are dangerous as used-items that are not dangerous per se but 'become dangerous weapons because they 'are used in a dangerous fashion.' " Commonwealth v. Wynton W., 459 Mass. 745, 749 (2011), quoting from Commonwealth v. Tevlin, 433 Mass. 305, 310 (2001). Here, there is no dispute that the pins taped to the juvenile's fingers are not dangerous per se. Thus, to sustain the adjudication of delinquency, we must determine whether the pins were dangerous as used. They were not.
"The essential question, when an object which is not dangerous per se is alleged to be a dangerous weapon, is whether the object, as used by the defendant, is capable of producing serious bodily harm." Commonwealth v. Turner, 59 Mass. App. Ct. 825, 828 (2003), quoting from Commonwealth v. Marrero, 19 Mass. App. Ct. 921, 922 (1984). Because the pins were not employed in an assault, we need to evaluate whether the evidence permitted the jury to conclude that the juvenile used or handled the pins in a manner that made them a dangerous weapon. See Appleby, supra at 305-306; Turner, supra at 828-829. It did not.
Here, the teacher interrupted the juvenile, who had taped some of the pins to his fingers. Whatever the pins' potential for harm, the juvenile did not use them in a manner that was capable of causing serious harm or even apprehension of serious harm. See Turner, supra. In fact, albeit reluctantly, the juvenile turned the pins over to the teacher upon request. Moreover, the evidence demonstrated that his only apparent motivation was to mimic a character in a movie.
The Commonwealth likens this case not to Turner, but more to Commonwealth v. Bradshaw, 86 Mass. App. Ct. 74, 81-83 (2014), where we held that a knife protruding from a backpack qualified as a dangerous weapon. We disagree. In Bradshaw, the defendant possessed a fourteen and one-quarter inch knife with a nine-inch blade, ibr.US_Case_Law.Schema.Case_Body:v1">id. at 77, significantly larger and more dangerous than the pins here. As we recognized in Bradshaw, "[t]he context ... is important as well." Id. at 82. There, the defendant, who knew he was under investigation for molesting a nine year old child, brought the knife to a meeting with a police officer, which he insisted be away from the police station. Id. at 75-76. He then tried to lure the officer to railroad train tracks. Id. at 77. During this time, the knife was protruding from his backpack such that it could easily be wielded. Id. at 82. As we mentioned (with some understatement), "[t]he manner in which the defendant carried the knife and the circumstances surrounding his carrying the knife defeat any suggestion that he was doing so with an innocent purpose." Id. at 82-83.
Here, by contrast, there is no evidence suggesting that the juvenile had any purpose for his possession of the pins other than an adolescent distraction from school. This would be a much different case if the Commonwealth had presented any evidence, circumstantial or otherwise, suggesting that the juvenile intended to use the pins as a weapon at any point in the future. But merely having the potential to be dangerous, without more, is insufficient in light of our common-law definition that an item, which is not dangerous per se, is deemed a dangerous weapon only when it is "used in a dangerous fashion." Appleby, 380 Mass. at 304. Such circumstances were not presented here.
The juvenile's sole challenge to the assault count, on the other hand, has no merit. The prosecutor's argument that it was possible, had the juvenile refrained from further misbehavior after relinquishing the pins, that he would not have been charged was well supported by the teacher's testimony that she considered things "good" at the point that he turned over the pins. The teacher did not decide that even a discussion with the assistant principal was necessary until discussing the matter with another teacher, suggesting that she had no intention at that time of proffering charges. The "prosecutor is entitled to argue the evidence and fair inferences to be drawn therefrom." Commonwealth v. Deane, 458 Mass. 43, 55-56 (2010), quoting from Commonwealth v. Paradise, 405 Mass. 141, 152 (1989). See Commonwealth v. Deloney, 59 Mass. App. Ct. 47, 51 (2003). The argument was proper.
Adjudication of delinquency as to assault and battery charge affirmed.
Adjudication of delinquency as to unlawful possession of a deadly weapon charge reversed, verdict set aside, and judgment for the juvenile.

After speaking with another teacher, the juvenile's teacher determined that the pins had to be turned over to the school's administration. This greatly angered the juvenile, and his teacher sent him to the assistant principal's office. In that office, the juvenile assaulted his teacher.